**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **TERRANCE JAMES KELM** | **CIVIL ACTION NO. 20-0017** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN BILLY TIGNER, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Plaintiff Terrance James Kelm, a prisoner at Rayburn Correctional Center ("RCC") proceeding pro se and in forma pauperis, filed the instant proceeding on approximately December 11, 2019, under 42 U.S.C. § 1983. He names the following defendants: Warden Billy Tigner, Assistant Warden Dwayne Saucier, "Medical Department of Madison Parish Correctional Center," Nurse Kyle, and Nurse Andrea Whittney.[1]

**Background**

Plaintiff alleges that he injured his back "real bad" lifting boxes at Madison Parish Correctional Center ("MPCC"). [doc. # 1, p. 5]. He requested care on July 9, 2019, but he had to wait until July 23, 2019, to see a physician, who prescribed him ineffective medication for "pain in his side." [doc. #s 1, p. 5; 13-1, p. 1]. He continued to suffer pain. [doc. # 13-1, p. 1].

Plaintiff claims that, on August 14, 2019, he asked Assistant Warden Dwayne Saucier to arrange care, but "nothing happened." *Id.* Plaintiff's mother called MPCC the same day to request care for him, but "they" told her that "nothing is wrong with" him. *Id.*

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

On August 16, 2019, Plaintiff informed Nurse Kyle that he needed hospital care. *Id.* Plaintiff claims, however, that Nurse Kyle laughed in his face and told him that "nothing is wrong with" him. *Id.* Plaintiff asked Kyle again about hospital care on August 17, 2019, but Kyle did not respond. *Id.*

On August 18, 2019, Plaintiff forwarded a request for care to Warden Tigner, maintaining that, to that date, he still lacked hospital care. *Id.* Plaintiff claims, "still no hospital." *Id.* Plaintiff's mother and wife tried, unsuccessfully, to contact Warden Tigner many times. [doc. # 13, p. 1].

On August 19, 2019, Plaintiff asked Nurse Whittney to arrange care at a hospital, and Whittney responded that she would speak with a physician the next day. *Id.* On August 20, 2019, Whittney told Plaintiff that she spoke with a physician but the physician "didn't say anything." *Id.* Plaintiff claims: "No hospital yet. Still in pain." *Id.*

On August 21, 2019, Plaintiff asked Nurse Kyle to arrange care at a hospital, but Kyle responded, "No, I am not sending you to the hospital, fill out a sick call." *Id.* at 2. Plaintiff replied that he already requested care two to three weeks ago and that he has not received care at a hospital. *Id.* Kyle again refused to arrange care at a hospital. *Id.* Plaintiff alleges that he remained in pain. *Id.*

On August 23, 2019, "after a month of sick calls[,]" Plaintiff received an x-ray, a shot, and a prescription. [doc. #s 1, p. 5; 13-1, p. 2]. An emergency room physician told him that his disc was moving and that he "might need therapy or surgery." *Id.*

On a date between August 27, 2019, and September 3, 2019, Plaintiff informed a physician that he needed to be transferred "to a better facility." [doc. # 13-1, p. 2].

On September 16, 2019, Plaintiff was transferred to Elayn Hunt Correctional Center ("EHCC ") "for medical." [doc. # 1, p. 5].

On September 20, 2019, Plaintiff fell in the shower. [doc. # 13-1, p. 3]. A nurse evaluated him. *Id.*

On either September 23 or 24, 2019, Plaintiff received another x-ray and an ineffective back brace. *Id.*

On October 9, 2019, a physician evaluated Plaintiff's results, informed him that his back "is really messed up" and that his "L4 and L5 [are] bad," and scheduled an appointment with a neurologist. *Id.*

On November 15, 2019, a neurologist at University Medical Center in New Orleans, Louisiana, evaluated Plaintiff, provided medication for Plaintiff's pain, and scheduled an MRI. *Id.* Plaintiff received an MRI on December 3, 2019. *Id.*

On December 12, 2019, a physician explained that the MRI revealed that Plaintiff's "L4 and L5 are on his S1" and are causing the pain in his back and the tingling in his left leg. *Id.* Plaintiff had "an appointment to see the surgeon sometime in the next few weeks." *Id.*

As of January 15, 2020, Plaintiff had not seen a surgeon, and he was "laying on concrete going on 6 months [with] nothing for pain still. [sic]." *Id.*

On February 3, 2020, Plaintiff was transferred to RCC. *Id.*

On February 8, 2020, Plaintiff went to the emergency room because he was in "very bad" chronic pain at night. *Id.* He claims that he was only given Aspirin. *Id.*

On February 12, 2020, Plaintiff returned to University Medical Center to see a neurologist. *Id.* He secured an appointment with a back surgeon. *Id.*

As to his injuries, Plaintiff alleges:

3

> Lower left side of back (chronic pain) as well as my left testicle and tingling sensation in my left leg. Due to heavy lifting, pushing heavy loads, such as carts, personal property boxes, and heavy loads of trash, due to working as a (trustee) hall man. My L4 & L5 is crossed over each other, along with my S1, which is causing the pain to my left side lower back and left leg. This is what I seek relief for. [sic].

*Id.*

Plaintiff seeks proper care and treatment, as well as monetary compensation for his pain and suffering in an amount the Court deems reasonable. [doc. #s 1, p. 6; 13, p. 3].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff

5

'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Department of Madison Parish Correctional Center**

Plaintiff names "Medical Department of Madison Parish Correctional Center" as a defendant, claiming that it prolonged his "wait to be seen by the proper medical staff and to get the proper treatment for [his] back."

Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership." LA. CIV. CODE art. 24.

Here, "Medical Department of Madison Parish Correctional Center" does not qualify as a juridical person. See *Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to

6

suit . . . ."). Accordingly, to the extent Plaintiff names the "Medical Department" as a singular entity, the Court should dismiss Plaintiff's claims against it.[3]

If, by "Medical Department," Plaintiff means individuals other than those he identified in his amended pleading (i.e. other than Nurse Kyle and Nurse Whittney), he does not identify these persons and does not address how these unidentified persons were personally involved in depriving him of a constitutional right.

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Accordingly, to the extent Plaintiff names "Medical Department" as a group of unidentified persons, the Court should dismiss Plaintiff's claims against them.

**3. Medical Care**

To prevail, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by

---

[3] Below, the undersigned addresses Plaintiff's claims against Nurse Kyle and Nurse Andrea Whittney, alleged members of the Medical Department.

7

failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

### A. Delay in Care Between July 9, 2019, and July 23, 2019

Plaintiff first claims that he requested care on July 9, 2019, but he had to wait until July 23, 2019, to see a physician, who prescribed him ineffective medication for "pain in his side." [doc. #s 1, p. 5; 13-1, p. 1]. The Court should dismiss this claim because Plaintiff does not identify a responsible defendant. For instance, Plaintiff does not specify to whom he directed his

July 9, 2019 request for care (or who received it), and he does not name a physician—even an unidentified one—as a defendant.

### B. Delay in Care Between August 14, 2019, and August 23, 2019

Plaintiff claims that, on August 14, 2019, he asked Assistant Warden Dwayne Saucier to arrange care, but "nothing happened." For several reasons, the Court should dismiss this claim.

First, Plaintiff does not allege that Saucier refused to treat him, ignored his complaints, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. For example, Plaintiff does not allege that Saucier failed to relay his requests for care to a medical professional. Rather, Plaintiff simply alleges that "nothing happened" after he requested care, which prompts the question, why did "nothing" happen?

Second, Plaintiff does not allege that his injuries "dramatically increased in severity" between his prior treatment on July 23, 2019, and Saucier's conduct such that Saucier "would have effectively denied or delayed treatment for a new injury not previously treated . . . ." See *Petzold v. Rostollan*, 946 F.3d 242, n. 42 (5th Cir. 2019). Rather, Plaintiff's allegations suggest that, at worst, Saucier deferred to the treatment the physician rendered three weeks before. This does not reflect deliberate indifference: "[A]n official defers to prior treatment—and doesn't delay it—when he knows an injured prisoner has recently received medical care and denies the prisoner's additional treatment request for the same injury. . . . [M]erely refusing to provide additional treatment is insufficient for deliberate indifference." *Petzold*, 946 F.3d at 242 (finding that a supervisor did not deny or delay treatment because a nurse already treated the plaintiff's injury and the supervisor, who lacked medical training and who was aware of the prior treatment,

9

simply "*deferred* to a medical professional's prior treatment.").[4]  Saucier's presumed lack of medical training bolsters this conclusion.[5]  As the court stated in *Petzold*, a plaintiff "cannot disguise [] deliberate inaction as [] deliberate indifference."  *Id.*

Third, even assuming Saucier was not aware that Plaintiff already received treatment, Plaintiff does not allege that he suffered substantial harm *because* of the delay in care from August 14, 2019, when he requested care from Saucier, to August 23, 2019, when he received an x-ray, an evaluation by an emergency-room physician, a shot, and a prescription at a hospital.[6]  During this specific period, Plaintiff suggests that he suffered tingling in his left leg and pain in

---

[4] See also *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422–23 (5th Cir. 2017) (stating that a delay may only be inferred by an official's conduct clearly preventing the prisoner from receiving prompt medical treatment).

[5]  See *id* at n. 41 (citing *Davis v. Phillips*, 2016 WL 11200220, at *2 (E.D. Tex. Dec. 13, 2016), *report and recommendation adopted*, 2017 WL 941925 (E.D. Tex. Mar. 10, 2017) (concluding that prison officials are entitled to rely on the opinions and conclusions of qualified medical providers).

[6] As above, a delay in treatment is constitutional, unless there has been deliberate indifference that results in substantial harm.  *Blank*, 634 F. App'x at 448.

his lower back and testicle. [doc. # 13-1, p. 1]. This ongoing tingling and pain does not amount to substantial harm.[7, 8]

### C. Delay in Care Between August 16, 2019, and August 23, 2019

Plaintiff alleges that, on August 16, 2019, he informed Nurse Kyle that he needed hospital care, but Kyle laughed in his face and told him that "nothing is wrong with" him. Plaintiff asked Kyle again about hospital care on August 17, 2019, but Kyle did not respond.

The Court should dismiss this claim because, like the claim above, Plaintiff does not allege that he suffered substantial harm *because* of the delay in care between August 16, 2019,

---

[7] Compare *Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009) (finding that pain following a fall was not sufficiently severe during a delay in care); *Westfall v. Luna*, 903 F.3d 534, 551 (5th Cir. 2018) (finding no claim where the plaintiff's spinal injury was not impacted by a delay in care and adding that no substantial harm occurred because the plaintiff did not detail the severity of her pain and alleged only that, during the delay, she was "moaning in pain."); with *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (finding substantial harm where the plaintiff had a history of cardiac problems and endured *severe chest pains*); *Galvan v. Calhoun Cty.*, 719 F. App'x 372 (5th Cir. 2018) (holding that an inmate, who was eventually diagnosed with calculus of gallbladder with acute cholecystitis, stated a claim where he alleged that prison officials failed, for several days, to answer his repeated requests to be taken to the hospital for pain "so severe that he thought he might die."); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999) (finding a plausible claim where, following a failed procedure to remedy a broken jaw, the plaintiff's jaw was "rebroken" and he suffered constant *excruciating pain during the delay* in treatment); *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422–23 (5th Cir. 2017) (finding, where an inmate was stabbed and stomped in an attack lasting three to five minutes, substantial harm because the inmate suffered a "tremendous amount of pain" during the delay); *Coleman v. Sweetin*, 745 F.3d 756, 765-66 (5th Cir. 2014) (finding substantial harm where the plaintiff "was in so much pain that he was unable to lie down in bed or use the toilet properly.").

[8] Moreover, Plaintiff alleges that he continues to endure pain in his lower back and left leg, but he does not specify whether the following post-delay events contributed or caused his present symptoms: his two falls in the shower on September 20, 2019, the ineffective back brace he received on either March 23 or 24, 2019, his present conditions of confinement at EHCC (i.e. the concrete floor), the alleged ineffective care he received at a hospital on February 8, 2020, or the alleged failure of officials at EHCC or RCC to arrange surgery. [See doc. 13-1, p. 3]. Similarly, Plaintiff received extensive care following Saucier's alleged delay, yet he continues to endure the same symptoms. Thus, even if Saucier immediately arranged the care that Plaintiff eventually received, Plaintiff would have endured the same degree of pain because, under his allegations, the eventual care he received was insufficient.

and August 23, 2019, when he received additional treatment. Plaintiff does not specify the injuries or symptoms he experienced during this period, but presumably he endured ongoing pain and tingling in his side, back, leg, and testicle. As above, this ongoing pain does not amount to substantial harm. Moreover, to the extent Plaintiff simply disagrees with Nurse Kyle's decision to forego hospital care in favor of the medication the physician previously prescribed, Plaintiff does not describe deliberate indifference.

### D. Delay in Care Between August 18, 2019, and August 23, 2019

Plaintiff alleges that, on August 18, 2019, he forwarded a request for care to Warden Tigner, maintaining that, to that date, he still lacked hospital care. He claims, however, "Still no hospital." [doc. # 13-1, p. 1].

The Court should dismiss this claim because Plaintiff does not allege that he suffered substantial harm from August 18, 2019, when he requested care, to August 23, 2019, when he received care. Moreover, Plaintiff does not allege that his injury "dramatically increased in severity" between his prior treatment on July 23, 2019, and Tigner's inaction such that Tigner "would have effectively denied or delayed treatment for a new injury not previously treated . . . ." See *Petzold*, 946 F.3d at n. 42.

Further, Plaintiff faults Tigner because a policy posted in MPCC states that Warden Tigner is responsible for prisoners' medical needs. [doc. # 13, p. 1]. A supervisory official may be held liable if he implements "unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Plaintiff, however, does not allege that Tigner implemented the posted policy or that the posted policy caused his injuries. He does not allege, for instance, that he failed to receive medical care *because* Warden Tigner is responsible for prisoners' medical needs; rather, he alleges that he

12

continuously suffered pain due to ineffective medication, delays in care, and decisions to forego (or delay) hospital care and surgery. Again, the Court should dismiss this claim.

### E. Delay in Care Between August 19, 2019, and August 23, 2019

Plaintiff alleges that, on August 19, 2019, he asked Nurse Whittney to arrange care at a hospital, and Whittney responded that she would speak with a physician the next day. [doc. # 13-1, p. 1]. On August 20, 2019, Whittney told Plaintiff that she spoke with a physician but the physician "didn't say anything." Plaintiff claims, however: "no hospital yet." *Id.*

The Court should dismiss this claim. First, Whittney's actions—relaying Plaintiff's concerns to a physician—do not bespeak deliberate indifference. Second, Plaintiff does not allege that he suffered substantial harm from August 19, 2019, when he requested care, to August 23, 2019, when he began receiving further care. Third, Plaintiff does not allege that his injury dramatically increased in severity from July 23, 2019, when he received care, to August 19, 2019, such that Whittney would have effectively denied or delayed treatment for a new injury not previously treated. Fourth, to the extent Plaintiff disagrees with Whittney's professional opinion that he did not require hospital care, he does not describe deliberate indifference.

### F. Delay in Care Between August 21, 2019, and August 23, 2019

Plaintiff claims that, on August 21, 2019, he asked Nurse Kyle to arrange care at a hospital, but Kyle responded, "No, I am not sending you to the hospital, fill out a sick call." [doc. # 13-1, p. 2]. Plaintiff replied that he already requested care two to three weeks ago and that he has not received care at a hospital. *Id.* Kyle again refused to arrange care at a hospital. *Id.*

13

The Court should dismiss this claim because Plaintiff does not allege that he suffered substantial harm from August 21, 2019, when he requested care, to August 23, 2019, when he began receiving further care. Further, to the extent Plaintiff disagrees with Kyle's professional opinion that he did not require hospital care, he does not describe deliberate indifference.

### G. Claims Arising After Plaintiff's Transfer from MPCC

Plaintiff raises several claims which allegedly arose following his September 16, 2019 transfer from MPCC.[9] For instance, he claims that, on either September 23 or 24, 2019, he received an ineffective back brace. He claims that, as of January 15, 2020, he has not seen a surgeon and he is "laying on concrete going on 6 months [with] nothing for pains still. [sic]." [doc. # 13-1, p. 3]. He claims that, on February 8, 2020, he was transported to the emergency room for chronic pain, but he was only given Aspirin. *Id.*

The Court should dismiss these claims because they all arose after Plaintiff left MPCC, and Plaintiff does not allege that defendants, who all allegedly work only at MPCC, were involved.

Overall, Plaintiff's disagreement or dissatisfaction with the care he received falls short of establishing deliberate indifference and does not, consequently, state a plausible claim. See *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (finding that an inmate received adequate care, even though the treatment may not have been the best, and that any deficiencies in treatment were minimal; moreover, the plaintiff's continuing pain, in and of itself, did not demonstrate that a constitutional violation occurred).

---

[9] These ostensible claims are located in Plaintiff's diary. [See doc. # 13-1, p. 3]. In the body of his amended pleading, Plaintiff asks the Court to consider his attached diary entries as part of his amended pleading. [doc. # 13, p. 2].

## **Recommendation**

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Terrance James Kelm's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See** *Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 5th day of March, 2020.

Karen L. Hayes
United States Magistrate Judge